UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JAMES PARK,

                    Petitioner,

-v-

MARIEJOSEE KING, SUPERINTENDENT,
CLINTON CORRECTIONAL FACILITY,

                    Respondent.

------------------------------------------------------------x

## PETITION FOR WRIT OF HABEAS CORPUS

Now comes JAMES PARK, Petitioner herein and Defendant in the New York State courts, and petitions this Court to issue a Writ of Habeas Corpus, on the ground that he was denied his Sixth Amendment right to a speedy trial, viz.:

**I.      JURISDICTION AND VENUE**

Defendant is currently incarcerated at Clinton Correctional Facility, serving a twenty-year term of incarceration.

Defendant is incarcerated pursuant to a final judgment of conviction of the Supreme Court, New York County.

This Court has jurisdiction pursuant to 28 U.S.C. Sec. 2254.

**II.     EXHAUSTION AND PRESERVATION**

Petitioner raised his federal speedy trial claim by motion to dismiss in November 2021. It was denied on March 22, 2022. The claim was properly raised on appeal. The First Department addressed the merits of the claim and affirmed the conviction on May 30, 2024. An application for leave to appeal, raising the claim, was timely made to the New York State Court of Appeals and

docketed on June 28, 2024. It was denied on September 23, 2024. This Petition is timely as it is filed within one year and 90 days of the denial of leave.

### III.     STATEMENT OF RELEVANT FACTS

The facts of the underlying offense are largely irrelevant to the sole issue raised on appeal herein, except to note that defendant was arrested on January 29, 2017, and charged with second-degree murder, based upon a street fight with a former acquaintance. He was acquitted of murder but convicted at a jury trial of first-degree manslaughter. The trial itself, exclusive of jury selection, took eight full days and two half days. Most of the trial was consumed by evidence regarding the up-and-down relationship between the defendant and the decedent in the years leading up to the latter's death, and what the defendant did after leaving the scene. These witnesses, while consuming trial days, were unnecessary and ultimately, irrelevant. There were only two eyewitnesses to the actual killing, including the defendant. Their accounts were largely reconcilable, and the jury's verdict reflected recognition that a general melee was taking place; but defendant had a pocketknife and stabbed the decedent while fighting him. The case could have been tried without both the tedious and duplicative testimony about the backgrounds of the two protagonists, as well as the lengthy testimony about the defendant's *post-hoc* conduct.

#### A.  The Long March to Trial

Mr. Park was arrested on January 29, 2017. His trial finally began on March 22, 2022; five years, one month, and twenty-two days later. He was held on Rikers Island the entire time, often in isolation due to the Covid-19 pandemic. While incarcerated, he contracted Covid-19 and suffered from a lack of medical care. He repeatedly demanded a speedy trial, and was repeatedly denied. The prosecution consistently postponed his trial due to its own scheduling conflicts, both

before and after the pandemic, as well as its inability or unwillingness to comply with court-ordered discovery deadlines.

### 1.   2017 Comes and Goes

On January 29, 2017, Mr. Park was arrested, remanded, and sent to Rikers Island. He was indicted and subsequently arraigned on the indictment on March 16th. The prosecutor, at that time, announced her intention for a buccal swab order to do DNA testing. The court, in the first of many, many such statements, stated it wanted to "move this along." A-29.[1] On April 6th, the defendant was not produced for the taking of a swab, but motion dates were set. A-26. On June 22nd, new counsel appeared for the defendant and new motion dates were set. A-38.

Motions were timely made, and on September 14th, the trial court ordered the prosecutor to provide discovery within *fifteen days*. The prosecutor stated that this was "a little bit too short of a time. I'm going to need a little more time for it," and asked for "late October." A-40. The matter was adjourned to November 9th for "status." A-41.

On November 9th, the prosecutor stated that they had not completed discovery. Then, in the first of many, many scheduling conflicts that would consume close to half a decade, the prosecutor stated:

> Just given my schedule, I think it might need to take another month or so [to complete discovery]. And just for the record . . . because of my trial schedule before the end of the year I did not think even on the last court date that I would be able to schedule this case for even hearings, or hearings and trial until next year.

A-43. The matter was adjourned for another "status" date in the new year. A-44.

---

[1] The "A" references are to the Appendix submitted to the First Department, Appellate Division. All quoted material is from the transcript of the day cited. The Appendix and additional transcripts will be filed subsequently.

2.   <u>2018 Comes and Goes</u>

The first appearance of 2018 took place on January 18th. The prosecutor again admitted that "the discovery that is owed to [the defense] is not prepared." The court put the matter over for another "status" with respect to discovery and to "see what my trial schedule is." A-46-47.

On March 1st, the scheduled date, defense counsel was actually engaged in trial and requested *March 5th*. A-49. Instead, the court stated, "I'd like to put it out. Not a lot happening on this case," and set April 12th for counsel to appear, noting "there are a lot of discovery issues going on." A-49.

No transcript exists for the April 12th appearance. This transcript was not ordered by the prosecution in the State proceedings, and the court reporter for that date retired and did not leave notes. A-23.

The next court date was May 24th. Defense counsel reported that he received some additional discovery but the prosecutor indicated there was more material that had not been disclosed. The court stated, "I'm concerned that there will be discovery issues still pending" and told the prosecution "it doesn't sound to me like you are ready…." Therefore, the matter was not sent to a trial part but was calendared for August 9th for updates. Tr., 5-24-2018, at 2-4.

No transcript exists for the August 9th appearance. This transcript was not ordered by the prosecution in the State proceedings, and the court reporter for that date retired and did not leave notes. A-23. It is clear that the prosecution did not answer ready for hearings or trial.

At the next court date, on October 4th, the prosecution was not ready for hearings and the matter was again adjourned. A-41-42. On October 25th, the prosecutor stated that they didn't realize it at the time, but they had "scheduling issues," and the matter was adjourned to October 30th. A-44.

On October 30th, the prosecutor stated that they were "ready for all intents and purposes," but then immediately explained they were not—they requested a protective order for Rosario material and were missing a witness. A-28-29. The court told the defendant that it was "a little frustrated" at the pace of the case but explained to defendant that "at this late juncture, the DA is now requesting the Court to issue a protective order and the court must review." A-41-42. Mr. Park protested: "I think the District Attorney is doing this on purpose." The court insisted that the problem was that the ADA "is so jammed up with work..." A-43. The matter was adjourned until November 7th for hearings.

On November 7th and November 9th, the hearings—Dunaway, Huntley, and Wade—took place. On December 17th, defense counsel was ill and the matter adjourned to January 22, 2019, for argument. A-68.

### 3.   2019 Comes and Goes

Post-hearings arguments were held on January 22, 2019. The court denied all motions. The prosecution stated that February 7th, "was perfect for an update," because they had a homicide trial beginning on January 28th. A-71-72. On February 7th, a different prosecutor appeared and stated that the assigned prosecutor was not ready for trial, despite the fact that their other trial had not started. That prosecutor requested a date in "mid-April." A-74-75. The court put the matter on for nine days for a status update. On February 15th, the prosecutor stated they had a homicide trial scheduled for March 11th that would last four weeks and asked for a control date. A-79. It was not clear whether that was the same trial that delayed scheduling back in January, or a different one. Nor was it ever made clear whether the "homicide" was a murder or a lesser offense for which New York C.P.L. Sec. 30.30 time was running.

On the March 21st control date, the prosecution still was not ready, did not know when they would be ready, and again requested another date, in "mid or mid to late April" for another *control date*. A-82. Defense counsel answered "ready" and objected to further delays. The court replied: "Okay, fine." A-83.

Yet, instead of setting a trial date, the court sent the case to a new part, Part 94, that was designed to muscle dispositions on old cases. Defense counsel stated that he believed that disposition "appears highly unlikely." The court put it over anyway, stating: "We will see if he changes his mind." A-84.

On April 22nd, the matter was heard in Part 94. There was no discussion of trial dates and defendant again stated he was not interested in a plea. A-88. That court put the matter on for May 28th. Defense counsel objected, and the court commented: "He is entitled to a speedy trial, and he'll get his trial, but not yet, there are other cases that have to go before this one." The court added: "It's a murder case, and its speedy trial, it's not statutory." A-88-89.

On May 28th, the same judge was again presiding, again suggested a plea, and again the defendant refused. Without explanation, the court stated: "The case will be tried in September and I understand it will be tried in front of Judge Jackson." A-92. The court did not explain why no trial date was available earlier or why Judge Jackson had to have the case. The next control date took place on June 20. There, the prosecution suggested yet another control date, now in September, with a view toward trying the case in October, just after the end of September's U.N. conference.[2] A-95.

---

[2] The prosecution cited potential difficulties in obtaining police witnesses during the U.N. session. The Assembly took place on September 24-25, 2019.

6

On September 13th, the prosecution again claimed various scheduling problems with other cases and witnesses. A-98-99. The court set a November 12th trial date[3] and that date was confirmed on the October 16th appearance. A-106.

On November 12th, the prosecution provided yet more discovery, much of it voluminous, and all of it available to the prosecution far earlier. Even at that late date, the prosecution noted that discovery was not complete. Tr., 11-12-2019, at 2-3. Arguments were then heard on a Sandoval motion, and the matter adjourned for jury selection, which commenced on November 20th.

Unfortunately, before the end of jury selection, defense counsel fell ill and could not continue. The jurors were dismissed and the case placed on the calendar for the next year.

The trial record does not indicate when "old law" discovery was finally complete. However, in the *coram nobis* proceeding, the prosecution stated under oath that discovery was complete at some unspecified point prior to November 20, 2019, the day that jury selection began. Regan Aff., at 2, para 57; A-24-25. Thus, old law discovery was completed somewhere between November 12 and November 20, 2019. It took the prosecution a staggering thirty-three months to complete discovery, and twenty-six months after the prosecutor stated they just needed "a little more time," on September 14, *2017*, to provide discovery. It was not until November of 2020 that the prosecution finally committed to a trial date.

### 4.   2020 Comes and Goes

Any hope that matters could pick up where they left off was dashed at the January 23, 2020, appearance, where the prosecution declared itself "not ready" due to other commitments. A-113. Nor had the prosecution completed discovery required under the new discovery law that went into

---

[3] The transcript erroneously states "December" 12th.

effect on January 1, 2020, even though they had the case for three years and there was ample warning of the effective date of New York C.P.L. Article 245, which was postponed precisely to address this problem. A-113. The court stated that the next appearance would be to "pick a firm trial date." A-113.

At the next court date, on March 5th, the expanded discovery required by Article 245 still had not been supplied. A-115. Nor was the prosecution ready to set a trial date because of yet another scheduling conflict for a trial that "will take up most of April." The matter was adjourned for April 16th to "pick a firm date for [defendant], based upon [the prosecutor's] status." A-117.

On March 20, 2020, Governor Cuomo issued the first of a number of Executive Orders suspending various statutes related to criminal proceedings in New York.

The April 16th date was administratively adjourned to May 11th. The May 11th date was administratively adjourned to July 29th.

The next court appearance, on July 29th, proceeded over videoconference. Discovery under the new statute still had not been provided to the defense, including "electronic materials." A-131. The court stated, "[s]o, we're thinking maybe in the next couple of weeks or so, we will have a Certificate of Compliance….?" The prosecution agreed. A-131. *This was the first and last time the words "Certificate of Compliance" were uttered prior to trial*. The court informed the defendant that steps were being taken to modify the courthouse, but there was apparently a shortage of Plexiglas. A-123. The court assured the defendant that his case was the court's "Number One" priority and picked October 14th as another "control both for discovery, and to see where the courthouses are in terms of starting trials." A-126. The October 14th date was subsequently administratively adjourned.

8

5.  <u>2021 Comes and Goes</u>

The next appearance, on March 15, 2021, was held over video. The court, in recognition of the time that had passed, re-introduced herself to the defendant: "I was going to identify myself to you; you know I am Judge Jackson, after all of this time." A-129. *The prosecution admitted that discovery still had not been completed*. A-130. The court adjourned the case for two months for pandemic status.

On May 17th, again via video, Judge Mennin stood in and stated, "Judge Jackson has indicated that the case should be adjourned to August 4th for control…." Defense counsel objected, stated he was ready, and wanted the "first possible date." A-139. The defendant then stated:

> Your Honor, I have been incarcerated going on five years now. I don't understand what is going on anymore. I have been ready for trial, Your Honor. They have been holding trials across the United States. I have not been able to see my family.

A-140. Judge Mennin then interrupted him, stating that only bench trial trials were being held, and told him that he could waive trial by jury. The defendant stated, "I'm extremely anxious. I haven't been able to speak to my family in over a year, and my family – I feel what is going on is unconstitutional." A-131.

On August 4th, the next appearance, although the court found that discovery was finally complete, the prosecution was again not ready for trial. Tr., 8-4-21, at 4; <u>Id.</u> at 5. Again, the defendant tried to bring himself to trial, with defense counsel stating that "defendant has been incarcerated for a substantial period of time and he has asked me to stress on the court that he would like a date as soon as possible." <u>Id.</u> at 8. The court set down the next appearance for October 7th.

On October 7th, the court reassured the defendant that the case was "at the top of our list" and stated that November 15th looked feasible. A-135. The prosecution again refused to commit

to that date, claiming the need to confer with witnesses and adjust their schedule for the "number of other hearings that I scheduled." A-145. The court then adjourned the case for "status."

Following the October 7th appearance, Judge Jackson offered to intervene with other Parts in an attempt to get the matter tried on November 15th. The prosecution *refused*. On December 8th, the prosecution stated that her other cases are "trial bound on the 30.30 clock, it wasn't imaginable so I couldn't take advantage of the court's offer." A-145. Thus, what had been implicit all along was made explicit—the prosecution was choosing to try lower-level felonies which were controlled by Sec. 30.30, and content to let Mr. Park sit in jail as the months turned into years— and more years as the Constitutional requirement of a speedy trial was ignored. Again, the case was adjourned into a new year for trial.

On November 12, 2021, defendant filed and served a *pro se* Motion to Dismiss on Constitutional Speedy Trial grounds, together with a Memorandum of Law. A-7-19. In his affidavit, the defendant recited the many trial dates that had come and gone, and talked about the specific hardship of being confined to Rikers Island during the pandemic:

> While I was remanded to Rikers Island in April, 2020, I contracted the coronavirus, I received no treatment while in custody, I was placed into solitary confinement to isolate me from others instead. My health was in danger because I have acute asthma. All I was given was an asthma pump. I have developed post-Covid brain fog for which I have yet to be treated for [citation omitted]. In total, I was held in solitary at GRVC and the West facility for a total of 20 months, 18 of which were in the West facility with 23-hours in the cell, and sometimes 24-hours. Once I was released from solitary I was subject to extraordinarily harsh conditions of confinement throughout the pandemic. For years I have suffered from extreme anxiety from inhumane lengths of solitary confinement for which I am constantly being prescribed medications. Medications cannot alleviate my anxiety of the unknown of my future and I am suffering from PTSD attacks.

A-13. The Memorandum of Law addressed both the New York State and United States' Constitution Speedy Trial Clauses and made particular note of the Court of Appeals decision in

10

People v. Wiggins, 31 N.Y.3d 1 (Ct. App. 2018); Id. at 8-13. The documents were sent by certified mail to the court and to defense counsel to serve on the prosecution on November 12, 2021.

### 6. 2022: Trial Finally Happens

On February 14, 2022, the date trial was scheduled to begin, the prosecution again was not ready "due to scheduling of a number of parts of this trial . . . This includes witness scheduling and also includes my own schedule with two cases I have pending hearings on 30.30 matters . . . when I say 30.30 matters, I mean cases with clocks." A-159. The court then took up the issue of the Speedy Trial motion, calling it "a 30.30 motion," which it was most emphatically not. Without addressing the Constitutional Speedy Trial argument, the court proclaimed there was "absolutely no speedy trial issue on this case." A-2-4.

Trial finally began on March 22, 2022—five years, one month, and twenty-two days after Mr. Park's arrest. He was acquitted of murder but found guilty of manslaughter in the first degree. Defendant was sentenced on June 3, 2022, to a term of twenty-years imprisonment followed by five years post-release supervision. A-5.

## IV.    PROCEDURAL HISTORY

Petitioner's direct appeal was denied on October 22, 2022. People v. Park, 209 A.D.3d 568 (1st Dept. 2022). The Court of Appeals denied leave on December 14, 2022. People v. Park, 39 N.Y.3d 987 (2022).

Subsequently, Petitioner filed a Petition for Writ of *Error Coram Nobis*, alleging that his trial counsel was deficient for Sixth Amendment purposes in failing to raise both the Federal and State Constitutional Speedy Trial issues. The Petition was granted to the extent that the Appellate Division, First Department, granted leave to file a new appeal based on these Speedy Trial issues. People v. Park, 2023 N.Y. Slip Op. 78794 (U) at *1.

Petitioner did so. On May 30, 2024, the First Department again affirmed the conviction, finding that "approximately twenty months of [the almost 62 months of delay] may be properly attributable to the prosecution." People v. Park, 227 A.D.3 624, 211 N.Y.S.3d 352, 353 (1st Dept. 2024).  The First Department did not specify which periods of delay it attributed to the prosecution. The First Department went on to grant an unspecified period of Covid-19 delay, finding that the pandemic "significantly lengthened" defendant's pre-trial incarceration. Id. at 353. Further, the First Department found that the seriousness of the charge "necessitated the presentation of an extensive breadth of evidence . . . ." and that there was no specific prejudice to the defense, while noting that the defendant may have been prejudiced but ascribing no weight to it. The First Department did not address the fact that the defendant had repeatedly, personally and through counsel, asserted his speedy trial rights and attempted to bring himself to trial.

In his application for leave to appeal, Petitioner specifically raised and argued the Sixth Amendment Speedy Trial issue. Moreover, he asserted there, as he does here, that the First Department impermissibly allowed, as a neutral factor, a full year of *post-pandemic delay* while the prosecutor expressly chose to try other, less serious cases to prevent those from being dismissed on statutory speedy trial grounds. In reply, the prosecution did not contest this formulation.

The Court of Appeals denied leave on September 23, 2024. People v. Park, 42 N.Y.3d 972 (2024).

This Habeas Petition followed and a Memorandum of Law is filed herewith.

WHEREFORE, the Petition should be granted and the defendant discharged from custody.

12

Respectfully submitted,

*Ron Kuby*

_____

Ronald L. Kuby
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, NY 10011
(212) 529-0223
(917) 602-3992 (mobile)
Ronaldlkuby@gmail.com
Attorney for James Park

Dated:  New York, NY
        November 20, 2025

13